UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND

CRIMINAL ACTION NO. 15-15-DLB-EBA

UNITED STATES OF AMERICA                                        PLAINTIFF

vs.       **ORDER ADOPTING REPORT AND RECOMMENDATION**

RICHARD E. PAULUS, M.D.                                 DEFENDANT

*********************

       This matter is before the Court upon Defendant Richard E. Paulus' Objections (Doc. # 41) to Magistrate Judge Edward B. Atkins' Report and Recommendation ("R&R") of November 25, 2015 (Doc. # 47), in which he recommended that Paulus' Motion to Strike Surplusage (Doc. # 23) be denied in part and granted in part. Specifically, Judge Atkins determined that the Court should preserve the peer comparison statistics and compensation figures currently included in the Indictment and excise two paragraphs relating to the Kentucky Board of Medical Licensure's ("KBML") inquiry. Paulus and the United States have each filed Objections (Docs. # 57 and 58) to the R&R. Paulus insists that Judge Atkins applied the wrong standard of review and erroneously allowed nonessential allegations to remain in the Indictment. The United States contends that Judge Atkins erred in striking the two paragraphs relating to the KBML investigation because they are factually accurate and relevant. Both sets of Objections are now fully briefed (Docs. # 62, 64, 72 and 74) and ripe for the Court's review. For reasons stated herein, all Objections are **overruled** and the R&R is **adopted in full**.

1

Pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Criminal Procedure 59(b), a district court judge may refer dispositive matters to a magistrate judge for the preparation of a report and recommendation. "[T]he magistrate judge must promptly conduct the required proceedings" and "enter on the record a recommendation for disposing of the matter, including any proposed findings of fact." Fed. R. Crim. P. 59(b)(1). If a party files objections to the recommendation, a district court must then consider those objections *de novo* and "accept, reject, or modify the recommendation, receive further evidence, or resubmit the matter to the magistrate judge with instructions." Fed. R. Crim. P. 59(b)(3).

The indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). If it contains surplusage, the defendant may ask the court to strike the excess material. Fed. R. Crim. P. 7(d). Rule 7(d) is "permissive, not mandatory[,]" and has been "strictly construed against granting surplusage." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). It is "properly invoked when an indictment contains nonessential allegations that could prejudicially impress the jurors." *Id.* (stating further that "[t]he granting of such a motion is proper [ ] only where the words stricken are not essential to the charge"). "[I]f the language in the indictment is information which the government hopes to properly prove at trial, it cannot be considered surplusage no matter how prejudicial it may be (provided, of course, it is legally relevant)." *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993) (internal quotations omitted). Such questions are committed to the court's discretion. *Kemper*, 503 F.2d at 329.

In his Order, Judge Atkins concluded that the paragraphs relating to peer comparison statistics should be retained because of their relevance. After all, this

information creates context for the jury to evaluate the allegations against Paulus. Judge Atkins also felt it necessary to preserve the paragraphs relating to containing compensation figures, reasoning that evidence of Paulus' income is relevant to the question of motive. As for the paragraphs describing the KBML inquiry, Judge Atkins recommended that two of them (paragraphs 36 and 37) be struck because they contained misstatements of fact. Specifically, these paragraphs attribute the findings of the KBML's consultant to the KBML itself, when in fact the KBML never affirmatively adopted those findings as its own.

Paulus complains that Judge Atkins used the wrong standard to evaluate the Motion. He contends that Judge Atkins should have considered whether the contested paragraphs contained nonessential information, rather than focusing on relevance. In making this argument, Paulus implies that the former inquiry, derived from *Kemper*, is incompatible with the latter, which originates from *Moss*. However, case law suggests that *Kemper* and *Moss* actually express complimentary principles. *See Moss*, 9 F.3d at 550 (incorporating *Kemper* into its surplusage discussion); *United States v. Garton*, Crim. A. No. 3:08-CR-31-JMH, 2009 WL 1424429, at *2 (E.D. Ky. May 21, 2009) (citing both propositions with approval). *Kemper* distinguishes between essential allegations, which cannot be stricken, and nonessential allegations, which *may* be stricken. *Moss* provides further guidance for determining when it is appropriate to strike nonessential allegations. Because *Moss* instructs courts to focus on relevance in conducting such inquiries, the Court concludes that Judge Atkins applied the appropriate standard in his R&R.

In the alternative, Paulus argues that Judge Atkins incorrectly applied the relevance standard. He first urges the Court to strike the peer comparison statistics from the Indictment because they "are not relevant to determining whether a specific procedure was

unnecessary or whether a specific blockage was falsely recorded."[1] (Doc. # 57-1 at 16). However, even if these statistics do not yield an answer to those specific questions, they are still relevant to the charges against Paulus. *See United States v. Weinstock*, 153 F.3d 272, 278 (6th Cir. 1998) (finding no error in the district court's decision to admit insurer-prepared billing records for the defendant, a podiatrist, and his local colleagues); *United States v. Patel*, 485 F. App'x 702, 715 (5th Cir. 2012) (concluding that evidence of the volume of cardiac procedures performed by the defendant was circumstantially probative of relevant factual issues, such as his state of mind and the medical necessity of these procedures). The peer comparison statistics also provide context for the jury to evaluate these charges.[2] *See Weinstock*, 153 F.3d at 278 (observing that the insurer-prepared billing records were helpful in providing such context).

Nevertheless, Paulus contends that these statistics are irrelevant because they only compare him to other top cardiologists in the state and nation. Although these physicians are his "peers," insofar as they have all excelled in the same specialty, they do not necessarily have comparable patient populations. After all, "the region in which Dr. Paulus practiced was the number one metropolitan area in the country for people suffering from heart attacks." (Doc. # 57-1 at 17). This distinction may affect the probative value of the statistics, but it does not render them wholly irrelevant. Simply put, Paulus' point goes to

---

1) Paulus makes several alternative arguments using the relevance standard. Although he used a different standard in his initial Motion, the arguments asserted therein bear a close resemblance to the points raised in his objections. The Court is under no obligation to entertain repetitive arguments. However, it will briefly address these issues out of an abundance of caution.

2) Paulus is correct in stating that neither of these cases directly discuss the presence of peer comparison statistics in an indictment. However, both *Weinstock* and *Patel* address the issue of relevance, which is the key inquiry in adjudicating a motion to strike surplusage. *See Moss*, 9 F.3d at 550.

weight, not relevancy. He is certainly free to argue at trial that the jury should accord less weight to these statistics because they do not account for variations in patient populations, but he is not entitled to the relief he seeks in his present Motion. For these reasons, the Court need not strike the peer comparison data from the Indictment.

Paulus also takes issue with the United States' failure to identify the amount of extra income that he allegedly earned from placing each unnecessary stent. Instead, the Indictment only mentions his total income. Paulus argues that this reference, without any allegation that this figure "is dependent on the alleged fraud or false statements, is not relevant to the offenses charged." (Doc. # 57-1 at 14). However, the Sixth Circuit has recognized that evidence of income is relevant "to demonstrate financial gain was the motive for the crimes charged." *United States v. Logan*, 250 F.3d 350, 369 (6th Cir. 2001), overruled on other grounds by *McAuliffe v. United States*, 514 F. App'x 542 (6th Cir. 2013). Paulus' compensation was tied to his productivity, so evidence of his total income is certainly relevant. That being said, Paulus is free to point out the United States' failure to distinguish between his total income and the income allegedly derived from unnecessary procedures at trial, as it may aid the jury in weighing evidence of his total income. But because this point also pertains to weight, rather than relevance, the Court again sees no need to strike Paulus' compensation figures from the Indictment.

Paulus next takes aim at three paragraphs relating to the KBML investigation. He contends that paragraph 35, which references the anonymous complaint received by the KBML, should be stricken because it invites the jury to find him guilty of wrongdoing based on the opinion of an unknown individual. This concern is overstated. The paragraph simply explains how Paulus came to the KBML's attention. The resulting investigation is relevant

to the charges against Paulus, and so, it cannot be stricken from the Indictment.

As for paragraph 38, which quotes from the KBML consultant's report, Paulus contends that it should be stricken because an indictment is "not an appropriate forum for the government to set forth putative expert testimony in writing for a jury." (Doc. # 57-1 at 11). Although the United States has expressed an intent to call the KBML consultant as an expert witness at trial, it must be remembered that he is no ordinary expert retained solely for the purpose of rendering an opinion at trial. He did not prepare this report in anticipation of litigation, nor did he do so in exchange for financial compensation from the United States. Instead, the consultant played an independent role in the KBML's investigation, which is relevant to the charges against Paulus. Accordingly, the Court will decline to strike this paragraph from the Indictment.

Paulus finally argues that paragraph 39, which references the Agreed Order of Retirement, should be stricken as irrelevant "because the KBML made no findings of fact and Dr. Paulus made no admissions." (Doc. # 57-1 at 11). Even so, Judge Atkins found that the Agreed Order was relevant because Paulus "entered into the settlement and Retirement Order with the KBML 'in lieu of revocation' – only upon becoming aware of the surrounding federal investigation – thereby increasing the probability that he was taking preemptive, ameliorative measures to defend himself rather than opting to retire of his own volition." (Doc. # 47 at 12). Paulus responds as follows:

> This reasoning creates inappropriate incentives for the government because it would allow the U.S. Attorney's Office to create evidence by orchestrating a proceeding with the KBML when it knows that a physician has to either (i) defend the allegations and waive his Fifth Amendment rights; or (ii) enter into an agreed order of retirement and allow the government to allege that this is

6

somehow relevant to the issue of innocence or guilt.[3]

(Doc. # 57-1 at 12).

The Court must admit that it finds Paulus' concerns about the U.S. Attorney's incentives to be overstated. It simply cannot envision a scenario in which the U.S. Attorney regularly begins using the KBML as a forum for evidentiary fishing expeditions. As for the Agreed Order, it may not contain admissions from Paulus, and it may not explain whether a specific procedure was necessary, but it is relevant to the charges in this case. After all, it explains how the KBML investigation resolved and why. Even if the United States attempts to construe this as evidence of Paulus' guilt, Paulus himself is free to argue that he entered into the Agreed Order for more innocuous reasons. However, he is not entitled to have this paragraph stricken from the Indictment.

The United States objects to only one aspect of Judge Atkins' R&R, in which he recommended that the Court strike paragraphs 36 and 37 from the Indictment. It contends that Judge Atkins made an artificial distinction between the activities of the KBML investigator and the KBML itself. Because the KBML retained this consultant for the purpose of investigating Paulus' conduct, the United States argues that his findings are automatically attributable to the KBML. However, the Kentucky Medical Practice Act indicates that the opposite is true. When an individual submits a grievance to the KBML, the matter is assigned to an inquiry panel. Ky. Rev. Stat. Ann. § 311.591(1). The panel

---

3) Although he provides little detail to support this assertion, Paulus repeatedly complains about the U.S. Attorney's involvement in the KBML proceedings. (Doc. # 57-1 at 11). However, his concerns go more to the probativeness of the evidence than its relevance. Paulus may attempt to prove at trial that the KBML investigation was spurious or fueled by improper motives, but these issues pertain to probativeness more than relevance.

7

conducts an investigation and determines whether there is evidence of a violation of the Act that warrants the issuance of a complaint. Ky. Rev. Stat. Ann. § 311.591(2). If the inquiry panel decides to issue a complaint, the matter is then scheduled for an administrative hearing before a hearing panel, which makes a final finding of misconduct. Ky. Rev. Stat. Ann. § 311.591(7)(a)-(c). The KBML may make an informal disposition of the matter at any time. Ky. Rev. Stat. Ann. § 311.591(6).

The KBML never held an administrative hearing in Paulus' case. Instead, it opted to informally resolve the matter via Agreed Order of Retirement. Because the KBML disposed of the matter before holding a hearing, it follows that there was no formal finding of misconduct. This conclusion is supported by the text of the Agreed Order of Settlement:

> While the licensee denies engaging in any unprofessional or illegal conduct, he agrees that, based upon the Stipulations of Fact, *the Hearing Panel could conclude* that he has engaged in conduct which violates the provisions of KRS 311.595(9), as illustrated by KRS 311.597(3) and (4). Accordingly, there are legal grounds for the parties to enter into this Agreed Order of Retirement.

(Doc. # 36-1 at 3) (emphasis added). While there may have been evidence to support a finding of misconduct, the language of the Order indicates that the KBML stopped short of making such a finding. Because the Indictment incorrectly attributes the consultant's findings to the KBML itself, the Court will adopt Judge Atkins' recommendation and strike paragraphs 36 and 37.

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Defendant Richard E. Paulus' Objections (Doc. # 57) are hereby **OVERRULED**;

  (2) The United States' Objection (Doc. # 58) is hereby **OVERRULED**;

  (3) The Report and Recommendation prepared by United States Magistrate Judge Edward B. Atkins (Doc. # 47) is hereby **ADOPTED IN FULL** as the findings of fact and conclusions of law of the Court; and

  (4) Defendant Richard Paulus' Motion to Strike Surplusage (Doc. # 23) is hereby **DENIED IN PART and GRANTED IN PART**.

  This 22nd day of January, 2016.

Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\ORDERS\Ashland Criminal\2015\15-15 Order Adopting R&R re Surplusage Issue.wpd