# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF KENTUCKY
# NORTHERN DIVISION
# ASHLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | |
| Plaintiff, | * | |
| v. | * | INDICTMENT NO. 0:15-CR-15-DLB-EBA |
| RICHARD E. PAULUS, M.D., | * | |
| Defendant. | * | |

### DR. PAULUS'S REPLY IN SUPPORT OF HIS MOTION TO DISMISS THE INDICTMENT PURSUANT TO *RUAN V. UNITED STATES*, 597 U.S. – (2022)

The government argues that the Supreme Court's decision in *Ruan v. United States*, 597 U.S. __ (2022) is irrelevant to this health care fraud and false statements case but presents no valid reason why that should be so, nor does it refute the compelling reasons why *Ruan* is instructive here. Under *Ruan*, criminal cases based on a doctor's medical decisions must be supported by something more than after-the-fact opinions from expert witnesses. Without evidence of a doctor's individual, subjective intent, a criminal conviction violates due process.

From the outset of its investigation, and throughout the first trial and subsequent appeals, the government has based its case on the opinions of expert witnesses who disagree with Dr. Paulus's treatment decisions. Specifically, it has contended that it can establish criminal liability because Dr. Paulus interpreted angiograms to show blockages of 70% or more while the government's experts believe they were actually 30% or less, which is beyond what its experts assert to be the outer bounds of inter-observer variability, and this happened so often that it can only be explained by fraud. That theory was shattered, however, by the information in the Shields Letter. What remains of this prosecution is insufficient as a matter of law to support a criminal

1

conviction in the post-*Ruan* landscape, and the way the government hopes to use the health care fraud and false statement statues is unconstitutional.

## **ARGUMENT**

**I.      The Court Is Empowered To Consider The Constitutionality of this Prosecution in Light of *Ruan***

The government argues that Dr. Paulus's motion is improper because, by asking the Court to determine whether the prosecution's evidence could sustain a conviction under *Ruan*, he is inviting the Court to evaluate his intent and thereby invade the province of the jury. That is incorrect, however, because the motion raises questions regarding the constitutionality of the government's case. Federal Rule of Criminal Procedure 12(b)(1) states that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." And it is well settled that a "defense is thus 'capable of determination' if trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense." *United States v. Covington*, 395 U.S. 57, 60 (1969).

Additionally, limited fact-finding is permissible. As the Sixth Circuit explained in *United States v. Levin*, this Court is "not limited to the face of the indictment in ruling on the motion to dismiss since Rule 12 vested the court with authority to determine issues of fact in such a manner as the court deems appropriate." 973 F.2d 463, 467 (6th Cir. 1992) (internal quotation omitted). When the uncontroverted evidence shows the government cannot prove criminal intent, dismissal under Rule 12 is appropriate. *Levin* provides a useful example. In that case, the defendants had engaged in "bundling" to promote the sale of ophthalmological equipment, *i.e.*, offering a free gift or premium with the purchase of each medical device. *Id.* at 474. The government charged them with Medicare fraud based on the theory that bundling constituted an illegal inducement. The district court granted the defendants' motion to dismiss because, before the defendants had sold

2

the bundled items, the U.S. Department of Health and Human Services had approved the bundling program. *Id*. at 465. The district court determined that in light of those approvals, the defendants could not have formed the requisite intent to violate the law. *Id*. at 466. The Sixth Circuit affirmed, holding that "in the instant case the operative facts, including the [approval] letters, were undisputed and a two or three week trial of the substantive criminal charges would not have assisted the district court or this court in deciding the legal issues joined by the defendant's pretrial motion to dismiss the controversial counts of the indictment." *Id*. at 467.

The essential facts here are similarly uncontroverted. The parties agree that Dr. Paulus performed the procedures in question and the government's expert witnesses believe the blockages at issue were less severe than what Dr. Paulus wrote on the corresponding catheterization reports. Although the government claims its proof in the upcoming trial will be "stronger" than what it presented in 2016, its "stronger" evidence is comprised of *more* expert witness testimony to the same effect, which is not enough to sustain a conviction under *Ruan*. The Court need not engage in factual analysis to conclude that the lack of evidence regarding *Dr. Paulus's own subjective belief* makes it impossible for the government to prove intent as required under *Ruan*. Dr. Paulus's corresponding due process argument based on vagueness and lack of notice likewise present questions of law appropriate for consideration under Rule 12.

## II. *Ruan* Is Instructive In This Case

The government's claim that *Ruan* is irrelevant to this prosecution because it does not involve charges under the Controlled Substances Act ("CSA"), 21 U.S.C. § 841, is not persuasive. While *Ruan* is not direct, binding precedent that controls the outcome here, federal statutes with common purposes and structures are often interpreted *pari passu.* Courts throughout the United States are currently grappling with the import of *Ruan* and the extent to which it is instructive in

contexts even beyond health care.[1]  The courts are similarly considering how *Ruan* should influence the presentation of evidence and jury instructions.  *See, e.g.*, *United States v. Spayd*, No. 3:19-CR-0111-JMK, 2022 WL 4367621, at *8 (D. Alaska Sept. 20, 2022) ("To address Ms. Spayd's concerns that the jury will assess Ms. Spayd's guilt solely on the basis of objective criteria that is untethered to her intent or knowledge, the Court will consider offering a limiting instruction to the jury on this point.").  Only one district court has explicitly commented on the applicability of *Ruan* to health care fraud cases, and while it questioned *Ruan*'s applicability to a § 1347 charge, it analyzed the defendant's argument just the same.  *See United States v. Agresti*, No. 18-CR-80124-RAR, 2022 WL 2966680, at *3 (S.D. Fla. July 27, 2022).  Given the similarities between the statutory schemes, there are compelling reasons to treat them similarly.  The government fails to articulate why a doctor in a health care fraud case should have fewer constitutional protections than a doctor in a CSA case, or why well-established principles of statutory interpretation should be suspended in this prosecution.

The government also argues that because § 1347 already requires proof that a defendant acted knowingly and willfully, with intent to defraud, and because standard health care fraud and good-faith jury instructions refer to the defendant's own mental state, there is no chance that a fraud defendant could be convicted based on an objective, "reasonable doctor" standard, rendering *Ruan* irrelevant.  This argument fails, however, because the same features of § 1347 that are highlighted by the government also exist in the statutes analyzed in *Ruan* and its predecessors.  The CSA already includes a similar intent requirement, as do the child pornography statute

---

[1] *See United States v. Morgan*, 45 F.4th 192, 206 (D.C. Cir. 2022) (considering application of *Ruan* in the context of a conviction for child sex trafficking); *United States v. Alshahhi*, No. 21-CR-371 (BMC), 2022 WL 3595056, at *3 (E.D.N.Y. Aug. 23, 2022) (examining *Ruan*'s applicability to Foreign Agents Registration Act ("FARA") case and concluding it did not apply because, unlike the health care fraud and false statements statutes, FARA contains no intent provision).

analyzed in *X-Citement Video*, the food stamp statute in *Liparota*, and the felon-in-possession statute in *Rehaif*.[2] Nor is a good-faith jury instruction sufficient to protect a defendant's due process rights such that the safeguards announced in *Ruan* are unnecessary. Even the defendant in *Ruan* had the benefit of such an instruction at trial.[3] Under the reasoning of *Ruan*, the jury in this case ultimately will have to be instructed that guilt cannot be based on expert opinions alone and the government will be required to prove that *Dr. Paulus himself* believed the procedures at issue were unnecessary and the blockages less severe than he claimed. That change in the law is critical here.

### III. The Government's Case Fails Under *Ruan*

The government claims the new, more burdensome intent standard announced in *Ruan* is irrelevant because, even assuming that its proof in the upcoming trial will be the same as what it presented in 2016, that evidence is sufficient under *Ruan*. The government argues that in evaluating the evidence presented at the first trial, the Sixth Circuit held that "the government carried its burden with evidence of Paulus's astronomical billing numbers, his enormous salary, injured patients' testimony, … other evidence about KDMC's behavior that supported an inference that something was amiss . . . . [and] . . . around 100 angiograms [with] expert testimony explaining that Paulus had recorded severe blockages where none existed." Opp. at 4 (internal quotations

---

[2] *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72-73 (1994) (statute required that the defendant act "knowingly"); *Liparota v. United States*, 471 U.S. 419, 423-25 (1985) (same); *Rehaif v. United States*, 139 S.Ct. 2191, 2196-97 (2019) (same).

[3] *See United States v. Ruan*, 966 F.3d 1101, 1166 (11th Cir. 2020), cert. granted, 142 S.Ct. 457 (2021), and vacated and remanded, 142 S.Ct. 2370 (2022) (recounting jury instruction that stated that "[a] controlled substance is prescribed by a physician in the usual course of professional practice and, therefore, lawfully if the substance is prescribed by him in good faith as part of his medical treatment of a patient in accordance with the standard of medical practice generally recognized and accepted in the United States. The appellants in this case maintain at all times they acted in good faith and in accordance with standard of medical practice generally recognized and accepted in the United States in treating patients").

5

omitted). That contention is misleading. The Sixth Circuit found the government's evidence sufficient to prove intent when coupled with the inference of fraud arising from the purported pattern evidence. That inference is no longer viable, however, given the discovery of the government's cherry-picking and the results of the KDMC Review, in which the hospital determined reimbursement was only required in 7% of the cases.

Instead of addressing the loss of its pattern evidence, the government now argues that the KDMC Review is inculpatory and itself provides such evidence because there were additional procedures beyond the 7% about which the hospital's experts disagreed with Dr. Paulus, albeit to a lesser extent (not enough to warrant reimbursement of fees).[4] The government is correct that, post-*Ruan,* testimony from expert witnesses can still be probative of a defendant's subjective intent in some circumstances. But as is explained in *Ruan*, "the more unreasonable a defendant's asserted beliefs or misunderstandings are, especially as measured against objective criteria, the more likely the jury . . . will find that the Government has carried its burden of proving knowledge." *Ruan*, 597 U.S. __, __ (slip op., at 14-15) (cleaned up). The government's attempt to shift focus to procedures in which there was some disagreement with Dr. Paulus, but not enough to warrant reimbursement, does not change the analysis because the procedures fall within the range of known inter-observer variability and do not suggest fraud.[5]

---

[4] KDMC's determination that reimbursement was required for only 7% of the procedures – those for which an expert determined the blockage was 30% or less – was appropriate. The same benchmark has also been used by the government in this case. *See* Docket Entry No. 382-3 (2014 letter from the government seeking civil settlement with Dr. Paulus based on procedures in which the blockage was found by a government expert to be 30% or less).

[5] The government appears to assume that this information will be admissible at a second trial. While the inadmissibility of the information is beyond the scope of this motion, Dr. Paulus reserves the right to raise his objections at the appropriate time.

A review of the only health care fraud case that has thus far examined the government's proof under *Ruan* provides a useful contrast. In *Agresti*, the defendant was convicted under 18 U.S.C. § 1347 and moved for bond pending appeal on the ground that he had a substantial chance of overturning his convictions in light of *Ruan*. The court disagreed, holding that the government's case did not rest purely on objective evidence from expert witnesses. 2022 WL 2966680, at *3 (stating that "a cursory review of the record reveals that the government relied on no such 'objective' theory at trial"). The court acknowledged that the jury "heard expert testimony regarding the lack of any medical necessity underlying Defendant's extensive testing protocol," but held that the government had satisfied the *Ruan* standard through that evidence plus ample other evidence of the defendant's subjective knowledge of his wrongdoing. *Id.* Among other things, the defendant had created and used a fake drug testing protocol and told his business partner he had done so as a subterfuge; after coming under investigation by an insurer, he arranged for another provider to submit his bills; he lied to the FBI. *Agresti*, Pl.'s Combined Opp. to Def.'s Mots. for Acquittal at 4, ECF No. 495; *see also United States v. Kraynak*, No. 4:17-CR-00403, 2022 WL 3161907, at *9-11 (M.D. Pa. Aug. 8, 2022) (denying motion to withdraw guilty plea following *Ruan* based on similar evidence). That kind of evidence is absent here, and the government's "pattern" evidence no longer raises an inference of fraud. Dismissal of this case is therefore appropriate.

**IV.     This Prosecution Violates Due Process**

The government asks the Court to ignore Dr. Paulus's due process argument because it was rejected in 2015 and there is "no reason to depart from this law of the case." Opp. at 17. The reason to do so, however, is the Supreme Court's intervening opinion in *Ruan*. Dr. Paulus renewed his overbreadth and vagueness arguments precisely because that decision provides important

7

guidance about how a particularized and subjective intent requirement is necessary to avoid a conviction that violates due process for those reasons. As Judge Van Tatenhove explained in a case involving health care fraud and CSA charges, "the Court's ruling [in *Ruan*] was intended, at least in part, to alleviate the Defendants' vagueness concerns . . . . By imposing a stronger scienter requirement, the Court diminish[ed] the risk of overdeterrence, *i.e.*, punishing acceptable and beneficial conduct that lies close to, but on the permissible side of, the criminal line." *United States v. Taylor*, No. 621-CR-00013, 2022 WL 4227510, at *3 (E.D. Ky. Sept. 13, 2022) (internal quotations omitted).

The government has provided no meaningful response to the concern about its failure to articulate the relevant standards for a prosecution like this one. If this Court permits the government to use the health care fraud and false statements statutes in the way it has envisioned, doctors will have no notice of when alleged medical malpractice can be reframed as fraud. Prosecutors will have leeway to decide when they think a disagreement between their expert witness and a doctor is sufficient to warrant an indictment, creating a substantial risk of discriminatory enforcement. This does not comport with due process. *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 18 (2010). This is another reason why dismissal is required.

V. **The 2012 KDMC Review**

The government in its Opposition spends six-and-a-half pages of its eight-page Procedural History discussing the Shields Letter and the 2012 KDMC Review, which have little relevance to the pending motion. This appears to be an effort to rewrite history and argue that "no *Brady* violation actually occurred" by the non-disclosure of the Shields Letter to Dr. Paulus prior to trial in 2016. Opp. at 10. Notably absent from the Procedural History, however, are the following facts:

1. The government advised this Court during the August 2016 *ex parte* hearing that the Shields Letter itself was *Brady* evidence.

2. During the year prior to trial and before the Shields Letter was brought to this Court's attention, the government repeatedly failed to provide the Shields Letter to Dr. Paulus in response to three separate written demands for *Brady* evidence and additional oral demands.

3. The 2012 KDMC Review was arranged by KDMC's original lawyers, who were replaced in the spring of 2012. Dr. Paulus and his counsel understood that the 2012 KDMC Review was preliminary and superficial, did not involve any review of the patients' medical condition or records, and that further internal and expert review needed to be done.

4. As of the summer of 2013, Dr. Paulus and his counsel no longer had the right to access any information KDMC had made available to Dr. Paulus pursuant to their joint defense agreement, including the 2012 KDMC Review material, because KDMC had withdrawn from the joint defense.

5. When Dr. Paulus and his counsel were advised near the end of 2013 that KDMC had reimbursed the government for 75 procedures, our access to the 2012 KDMC Review materials had already been revoked. KDMC refused to provide the Shields Letter or the information contained therein to Dr. Paulus on privilege grounds. Dr. Paulus would have had to engage in extensive litigation to challenge that position (as the government later did when it sought the information in 2020).

6. KDMC concluded from its expert reviews that only 7% of the 2012 KDMC Review procedures reviewed warranted reimbursement to the government.

The fact of the matter is that Dr. Paulus and his counsel were not provided the Shields Letter and did not know the process KDMC used to identify the 75 procedures and reimburse the government for them.[6] The upcoming trial is not about the Shields Letter or the 2012 KDMC Review, but about the specific stent procedures that the government claims were improper. Dr. Paulus is still learning more about those procedures. Last week, Dr. Paulus's counsel was provided exculpatory evidence by the government that was not made available to him before the 2016 trial. We are reviewing that evidence to determine whether it warrants an additional filing.

---

[6] *See* August 28, 2020 Declaration of Hilary LoCicero, Docket Entry No. 433-1.

## **CONCLUSION**

The problems raised in this motion are ones of constitutional dimension that should not be deferred to a jury. Even the government cannot articulate when a disagreement between two cardiologists is stark enough to indicate fraud, or how frequently such disagreements must occur before an inference of criminality arises. The truth is that two cardiologists could disagree about the extent of a blockage by 100% and neither might be lying, and a cardiologist could place unnecessary stents 100% of the time and not harbor criminal intent. The only adequate safeguard against the overcriminalization of innocent but erroneous health care decisions is to require that the government present evidence of something more than just expert witness testimony and prove that the defendant himself subjectively believed he was committing a crime. That is what *Ruan* held, and that is why this case should not go forward.

Dated: October 7, 2022

Respectfully submitted,

/s/Robert S. Bennett
Robert S. Bennett
Hilary H. LoCicero
BENNETT LOCICERO & LIU LLP
1707 L Street, N.W.
Suite 1030
Washington, DC 20036
Tel: (202) 880-2309
rsbennett@bllfirm.com
hhlocicero@bllfirm.com

C. David Mussetter
MUSSETTER LAW OFFICE
P.O. Box 192
2709 Louisa Street
Catlettsburg, KY 41129-0192
Tel: (606) 931-0050
Fax: (606) 931-0051
attmuss@windstream.net

COUNSEL FOR DR. RICHARD PAULUS

**CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing Reply in Support of the Motion to Dismiss the Indictment Pursuant to *Ruan v. United States*, 597 U.S. ___ (2022) has been served on all counsel of record this 7th day of October, 2022, by filing a copy of the same with the Electronic Court Filing System of the United States District Court for the Eastern District of Kentucky.

                                                  /s/ Robert S. Bennett
                                                 Robert S. Bennett
                                                 Counsel for Defendant, Richard E. Paulus M.D.