UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

CRIMINAL ACTION NO. 15-CR-15-DLB

UNITED STATES OF AMERICA                                                                 PLAINTIFF

vs.                                         **MOTION TO DISMISS**

RICHARD E. PAULUS, M.D.                                                                  DEFENDANT

\* \* \* \* \* \* \* \*

Pursuant to Federal Rule of Criminal Procedure 48(a), the United States moves to dismiss the remaining charges against the defendant. Fifteen years ago, an anonymous caller reported the defendant to the Medicare fraud hotline, stating:

> Dr. Richard Paulus, a cardiologist, is performing unnecessary procedures on Medicare and Medicaid patients. He is putting stents into arteries that are not blocked…Dr. Paulus writes his reports to justify the procedures. The reports read the patients require stents. Dr. Paulus has been defrauding Medicare and Medicaid since 1998. The hospital administration is aware of the fraud but knows Dr. Paulus is providing revenue for the hospital. The administration is not concerned with the fraud.

The federal investigation that ensued led to a $40.9 million civil settlement with Kings Daughters Medical Center (KDMC) and a federal indictment against the defendant. The defendant proceeded to trial in September 2016, testified for five days about each of the procedures at issue in the trial, and was convicted of health care fraud and ten counts of knowingly and willfully making false statements in medical records. He was sentenced to sixty months of incarceration and ordered to pay $1.1 million in restitution to

1

Medicare, Medicaid, and other private insurers who were the financial victims of his scheme. After the verdict and on appeal, defense counsel claimed their trial strategy was impaired by evidence they supposedly lacked—specifically, the results of KDMC's review of the defendant's procedures. The Sixth Circuit Court of Appeals agreed, reversing the defendant's conviction and ordering a new trial. The defendant was released from the Bureau of Prisons custody after serving eight and a half months of his sentence. In 2022, over the defendant's objection, KDMC produced emails establishing that defense counsel did in fact know the results of KDMC's review well in advance of the first trial, contrary to defense counsel's representations to the Sixth Circuit and this Court.

The second trial, recently concluded, resulted in a hung jury and a mistrial, after weeks of testimony from 41 witnesses in the United States's case in chief, and 26 witnesses in the defense case. Notably, a month before trial, the Court excluded several categories of significant evidence. This included: (1) the contents of two anonymous complaints made to Medicare and the Kentucky Board of Medical Licensure (KBML); (2) the defendant's brokerage statement showing the financial gain from his scheme; (3) evidence that the defendant fell asleep during invasive cardiac procedures; (4) emails from hospital administrators celebrating the financial rewards of the defendant's astronomical procedure volume; (5) all evidence of the defendant's conduct before July 2008, including earlier unnecessary procedures and that the defendant sought to have exclusive intervention rights at KDMC; and (6) a peer comparison analysis showing the defendant singlehandedly did more stent procedures than all of University of Kentucky,

University of Louisville, and the Mayo Clinic. The Court also excluded the defendant's testimony from the first trial, which the first jury heard before convicting him of health care fraud and ten counts of knowingly and willfully making false statements in health care matters. Additionally, the Court granted the defendant's request to exclude the majority of the evidence that was the reason for the second trial: KDMC's internal review showing the defendant stented minimally blocked arteries in approximately 270 of the 1,000 reviewed procedures from 2009-2010.

Given the complexity and length of both trials, the Court's exclusion of meaningful evidence of the defendant's intent, and the significant resources required of the United States, the defense, and the judiciary, the United States will not seek to try the defendant a third time. As a consequence of the KBML investigation, the defendant agreed to retire his license to practice medicine in November 2014. Since then, the defendant has been unable to practice medicine, eliminating his ability to place unnecessary stents in patients and to improperly bill Medicare and Medicaid for those procedures. The United States steadfastly defends the validity of the first jury's verdict, especially since the defendant already knew of the alleged *Brady* information he used to obtain a second trial. However, given the history of the case and the evidentiary limitations the Court would presumably enforce again in a third trial, the United States moves to dismiss the remaining charges against the defendant. As dismissal is not "clearly contrary to manifest public interest," the motion must be granted. *United States v. Stapleton*, 297 F. App'x 413, 431 (6th Cir. 2008).

                Respectfully Submitted,

                CARLTON S. SHIER, IV
                UNITED STATES ATTORNEY

By:   /s/ Kate K. Smith
       Kate K. Smith
       Paul McCaffrey
       Assistant United States Attorneys
       260 W. Vine Street, Suite 300
       Lexington, Kentucky 40507-1612
       (859) 685-4820
       Kate.Smith@usdoj.gov
       Paul.McCaffrey@usdoj.gov

## CERTIFICATE OF SERVICE

On January 3, 2024, I electronically filed this document through the ECF system, which provided notice to counsel of record.

                /s/ Kate K. Smith
                Assistant United States Attorney